### BECKER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

GRADING STREET—EXTRA COST—ERRORS OF SURVEYOR.

    Defendant city entered into a contract with C. for the grading of a street. The contract recited that C. had inspected the "location of the work," and provided that defendant would employ a city surveyor to see that the work "is completed in conformity to the profile," and that at C.'s request the surveyor "will designate the center and grade lines of the street." It was provided that the surveyor, when so acting, should be the agent of the contractor, and not of the city, and that the city should not be liable for any delay, or for any error of the surveyor in giving grades, etc. _Held_, that the contractor is not entitled to recover for extra cost of completing the work caused by errors of the city surveyor in designating the grades, though the services were not performed at the contractor's request.

    O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by Jennie T. B. Becker, as executrix of James Brady, deceased, against the city of New York, to recover a balance claimed to be due under a building contract. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The following is the opinion at trial term (STOVER, J.):

This is an action brought to recover for work done under a contract for regulating and grading Claremont avenue from One Hundred and Twenty-Second to One Hundred and Twenty-Seventh street, made November 13, 1889. Four separate causes of action are set up in the complaint, but upon the trial judgment for the defendant was directed upon the third and fourth causes of action, and as to the remaining causes of action each of the parties requested the direction of a verdict in their favor; and thereupon it was agreed that the court should take the case under advisement, and that a direction could thereafter be made upon all the questions arising, together with the question of allowances, with like effect as if made upon the trial.

The first cause of action contains three items: First, an item of $325, as to which there is no dispute; second, the amount claimed for rock excavated and not included in the final certificate; and the third, the sum of $2,044, which is retained by the defendant under a claim that it is entitled to deduct this amount from the contract price by reason of the fact that the contractor exceeded the time by 584 days, for which $3.50 per day was charged. The facts as to the rock excavation are these: Upon going upon the work at the commencement, the contractor found center stakes, which he says he was told had been set by the engineer of the plaintiff. He had been notified to commence

the work by the engineer, and thereupon commenced work, grading upon either side of the center line of stakes as he found them set upon the ground. A short time after the commencement of the work, it was discovered that an error had been made in the setting of the stakes, and thereupon a new line of stakes was set by the surveyors of the defendant; and the contractor thereupon proceeded under these lines, and worked for a period of six or eight months. At this time it was ascertained that the second stakes and grade were erroneous, but the work had then progressed to such an extent that it was supposed to be practically completed for a distance of 600 or 800 lineal feet, and to such an extent had the work been carried along this distance that the excavating had been discontinued and the filling placed thereon. When these mistakes were discovered, the contractor again removed the filling, completed the excavation, and the street was regraded and filled. There is no dispute as to the facts, nor is there any dispute as to the amount of rock actually taken out, nor as to the increased cost of taking it out. The defendant offered no testimony, but relies, as to this item and the third item, upon a clause in the contract, which is as follows: "A city surveyor will be employed by the parties of the first part to see that the work is completed in conformity to the profile, and to ascertain and certify the quantity of the work done. Said surveyor, at the request of the contractor, will be directed to designate and fix grades for his guidance during the progress of the work, without charge: provided, that the said parties of the first part shall not be liable for any delay or for any errors of said surveyor in giving such grades, and said surveyor shall be considered as the agent of the contractor, so far as giving such grade is concerned, and not the agent of the city of New York."

This case is determined by the construction given to this clause of the contract. The contract contains the usual provision that the work shall be done under the direction and to the satisfaction of the commissioner of public works. The provision of the contract above quoted is one evidently intended to protect the city against careless or collusive acts of the engineer and the contractor, but it ought not to be so construed as to relieve the city from liability for the acts of its agents and servants, unless the contractor has by some act of his brought himself within its terms. The language of the clause is that upon the request of the contractor the commissioner of public works of the city will furnish a surveyor to designate the grade. But this is not the only duty which the city had towards the contractor. It is conceded that there is nothing in the contract or specifications that would enable the contractor to go upon the ground and locate the center or boundary lines of the street. He was almost necessarily dependent upon the direction that he might receive from the city officials for sufficient information to locate the place at which he was to perform his contract. The fact that the contract states that upon his request they will furnish grades does not necessarily relieve the city from its other obligation, that its employés and agents shall correctly represent the situation to the contractor; for the same clause states that the object of the employment of the city engineer by the parties of the first part is to "see that the work is completed in conformity to the profile, and to ascertain and certify the quantity of the work done." And inasmuch as the contractor is bound to complete the work to the satisfaction of the commissioner of public works, who is the chief under whom the city surveyor and the street department operate, it would necessarily follow that the directions given by the city surveyor or street department would be binding upon the contractor, and he would proceed only at great risk unless he complied with the directions of the city surveyor. It seems to me that it would not be reasonable to construe this contract so as to compel the contractor to proceed at his risk and upon his own responsibility both as to the location of the work and as to the extent of the work until it was completed, and then call upon the city for its acceptance. Ordinary experience indicates to us that this is not the way in which public work is done, but that all along through work of this kind the directions of the city and its officials in charge are followed by the contractor, and necessarily so. It is true that parties may stipulate any condition to a contract, and in this case the contractor might have stipulated that the work was to be undertaken at his own risk,—that he would receive no instructions from the city, and take the risk of its finally accepting the work;

but I do not think that the clause under consideration ought to be construed to this effect. "At the request of the contractor the city surveyor will be directed to designate and fix grades," but it is an open question whether he was not bound to fix grades and locate the place of operations for the contractor without the request of the contractor. Whether he was or was not, in order to make the defense available to the city it should be shown that these grades were fixed at the request of the contractor. There is no evidence that the contractor requested the fixing of the grades, but, upon the contrary, he states that he did not request it, but that they were given to him, and he did the work under the direction of the city surveyor, employed by the city. He was, I think, justified in following the directions of the city surveyor, if he was not really bound to do so, and the fact that he had done so would not bring him within the restricting clause of the contract; for, as we have seen, the city surveyor occupied a dual position: First, as the representative of the department, to see that the work was properly done; and this necessarily carried with it the right to direct how it should be done, as the city has expressly reserved the right to inspect and control the manner of the work. In this position he was the agent and officer of the city, and acting as such. In the other position, namely, only giving grades at the request of the contractor, he might then be said to be acting in his behalf. There is no evidence in the case that the city surveyor was directed to give grades at the request of the contractor under that clause of the contract, and the surveyor must be assumed to have been acting in pursuance of his general authority as the surveyor or engineer in charge of the work. It is a harsh, and to some extent an unreasonable, regulation to require a contractor to perform work according to the satisfaction of a surveyor, and at the same time relieve the city from any responsibility from the acts of that surveyor; and, in order to be relieved of liability, it ought to clearly appear that the contractor has brought himself within the terms of the contract which relieved the city, and he ought not to suffer under a doubtful or strained construction of an ambiguous contract. Another consideration,—as to the extra work done by the contractor in removing the filling and carrying on a new excavation after a portion of the street had been completed. This work is done under the inspection and direction of the city, and the grading and placing of the filling upon the work must have been done under the direction and with the knowledge of the inspector and surveyor employed by the city; and hence it must have been understood when the excavation was stopped, and the filling done, that, as to that portion of the work, it was completed. There is no question but that the contractor has followed the directions of the surveyor and the persons in charge for the city, and endeavored to complete the work to their satisfaction; and, having done this, it would seem that he is entitled to recover, and ought not to bear the loss occasioned by their errors. As to the item retained as charges for the delay in the completion of the work, the testimony is uncontradicted that, but for the errors of the surveyor in giving the lines and grades, the work would have been completed within the time. If I am correct in the views above stated, those errors were such as the city was responsible for, and therefore no charge could be made against the contractor for delays occasioned thereby. As has been stated, there is no dispute as to the amount of excavation, nor the increased cost of the work, by reason of the errors of the surveyor. It follows that the contractor is entitled to recover for the amount of the excavation actually done by him in the progress of the work.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Theodore Connoly, for appellant.
L. Laflin Kellogg, for respondent.

McLAUGHLIN, J.    On the 13th of November, 1889, the defendant entered into a contract with one Carr for the regulating and grading of Claremont avenue from 122d to 127th streets, in the city of New York. At the completion of the work a final certificate was made by

the engineer in charge, to the effect that Carr was entitled to receive, under his contract, the sum of $24,735.77.. This amount, prior to the commencement of the action, had been paid to him, except the sums of $325, "repairing security" retained according to the provisions of the contract, and $2,044 paid by the defendant to an inspector of the work, retained by it upon the alleged ground that it had a right to withhold that sum for the reason that Carr had not completed his contract within the time specified. Subsequently Carr assigned his claim under the contract to one Brady, and the plaintiff, as his executrix, has brought this action to recover the $325, the $2,044, and $6,568.80, for work done under the contract, which she alleges the engineer falsely and fraudulently refused to include in the final certificate, and also the further sum of $9,739.95, increased cost of completing the work under the contract, which she alleges was occasioned by the city surveyor giving erroneous center and grade lines of the street. Other causes of action were alleged, but, inasmuch as the complaint was dismissed as to them, it is unnecessary to consider them, since the plaintiff has not appealed. At the close of the trial, which took place at the end of plaintiff's case (the defendant offering no evidence), each party moved for the direction of a verdict; and it was then agreed between counsel that the jury be discharged, and that the court might take the case under consideration, and thereafter direct a verdict in precisely the same way as though it had been done in the presence of the jury at the trial. This was done, and the agreement amounted to a submission of the whole case to the trial court, and the decision had the same effect as though a verdict had been rendered by direction of the court at the close of the trial. Adams v. Lumber Co., 179 N. Y. 176, 53 N. E. 805. The court thereafter directed a verdict in favor of the plaintiff for $16,776.50, together with interest thereon to the date of the trial, and from the judgment entered on such direction the defendant has appealed.

In considering the question presented upon this appeal, we must assume that every fact necessary to be established by the plaintiff to entitle her to a verdict was found in her favor, in so far as there was evidence to sustain the finding. As to the $325 "repairing security," it is not questioned but that the plaintiff is entitled to recover that sum. Therefore so much of the appeal as relates to that item may be dismissed without further consideration. The three remaining items will be considered together.

It is not disputed but that the defendant paid $2,044 to an inspector, and that such payment was caused by reason of the contractor's failure to complete the work under the contract within the time specified therein. Neither is there any contest between the parties that the engineer did not include in the final certificate the amount of the second item, nor that it cost the contractor the amount claimed in the third item to do the additional work. But it is claimed by the appellant that it is not liable to the respondent for these items, or any of them, for the reason that the delay which resulted in the payment of the $2,044 to the inspector, as well as the cost of the additional work not included in the final certificate, and the increased cost of doing the work, was the fault of the contractor, and not the fault of the defend-

ant, since the same were occasioned by an error in designating the center and grade lines of the street. After a careful consideration of the contract under which the work was done, and the evidence introduced by the plaintiff in explanation of the delay, the additional work, and increased cost, we have been unable to reach a conclusion other than that the same were caused by the contractor, and not the defendant. It will be remembered that the work was all done under a written contract, which provided that the contractor, prior to the execution of the contract, had satisfied himself by a personal examination of "the location" of the work, and he had agreed that he would not at any time thereafter dispute or claim that the statements or assertions contained in the proposals for the work were inaccurate, in regard to the depth of the excavation to be made or the nature or amount of the work to be done, and "that the street, for its whole width, is to be regulated and graded, where required, in accordance with the plan and profile of the said street    *    *    *    on file in the bureau of street improvements." He also expressly agreed in his contract that:

"A city surveyor will be employed by the party of the first part [the city] to see that the work is completed in conformity with the profile, and to ascertain and certify to the quantity of work done. Said surveyor, at the request of the contractor, will be directed to designate and fix the grades for his guidance during the progress of the work, without charge: provided, the said party of the first part shall not be liable for any delay or for any errors of said surveyor in giving such grades, and said surveyor shall be considered as the agent of the contractor, so far as the giving of such grades is concerned, and not the agent of the city of New York."

By the contract the contractor agreed that he would regulate and grade the street in accordance with the plans and specifications, and the map and profile on file; and, for the purpose of determining whether he was performing his work in accordance with his contract, he had the right to employ a surveyor, at his own expense, or he could, without expense, if he saw fit, obtain the services of the city surveyor, but if he relied upon the latter, he expressly agreed that the city should "not be liable for any delay or for any error of said surveyor in giving such grades," and that, in case services were rendered by the city surveyor, he should be considered the agent of the contractor, and not the agent of the city. When the contractor commenced work, according to his own testimony, he found certain stakes set, indicating, as he supposed, the center line of the street, and, assuming that they were correctly set, he prosecuted his work for several days according to them, when one Grassnock appeared, who informed him that he was an assistant to one Slater, the city surveyor, who had charge of the grading of that street. That Grassnock changed the stakes which he found set when he commenced work, and he thereafter worked according to the stakes set by Grassnock. That he subsequently employed a surveyor, at his own expense,—just when, the record fails to disclose,—who informed him some time in July, 1890, that the stakes set by Grassnock did not correctly indicate the center or grade line of the street, and he thereupon conveyed such information to the superintendent of public improvements, who, in turn, directed him to proceed with the work in accordance with the grade

lines and stakes to be given by Slater, the city surveyor. That he thereupon saw the city surveyor, and requested him to indicate the center and grade lines, which he did by moving the stakes set by Grassnock several inches to the west.

As we have said, it is not disputed that the amount retained for the inspector's fees was actually paid by the city on account of the delay in not completing the contract within the time specified in the contract; nor does it seem to be disputed that the amount paid by the contractor for excavating a quantity of rock and earth sought to be recovered in this action was not included in the final certificate given, and that the additional expense was occasioned by reason of the contractor's assuming that the center line of the street had been correctly designated by the stakes which he found set when he commenced work, or the erroneous designation of them by Grassnock. But under the contract the city cannot be held liable for this error. To hold otherwise is to render nugatory the provisions of the contract by which the contractor agreed to assume responsibility and liability in this respect. This the contractor knew, and what he did unmistakably evidences that fact. In the first place, he had no right to assume that the stakes which he found upon the ground, indicating, as he supposed, the center line of the street, bound the city. There is nothing to show that the city put them there, or that they were intended to be used by him in prosecuting his work under the contract, or in fulfillment of its provisions. And, in the second place, there is nothing to indicate that the contractor supposed that he had a right to, or in fact did, rely, as binding the city, upon the work done by Grassnock. He, of course, knew that the contract required him to perform the work in accordance with the plans and specifications, and the map and profile on file, referred to in the contract. But it is said that the city is liable because the contractor did not request Grassnock to indicate the center or grade lines, and, not having requested him to do this work, he is not bound by what he did; that, not having made a request to have the center and grade lines designated, he had a right to assume (Grassnock being in the employ of the defendant) that his work was correct. There is no force in this contention, for the reason already indicated, viz. that by the provisions of the contract the city had expressly provided that the contractor could have a city surveyor if he wanted to designate these lines, but in that case the surveyor was the agent of the contractor, and not the agent of the city. Nor is it true that the contractor acted upon the assumption that the work done by Grassnock was correct. On the contrary, he ridiculed and criticised his work. He knew it was of a most primitive character and that no reliance could be placed upon it, and, as evidence of this fact, he employed a surveyor at his own expense,—just when does not appear, —who informed him, several months after the commencement of the work, that a mistake had been made in the center and grade lines; and the contractor then requested Slater, the city surveyor, to personally designate such lines, which Slater did. Therefore, if we give to the testimony of the contractor the most favorable consideration possible, it appears that he not only had no right to, but in fact did not. rely upon the work done by Grassnock. If the defendant is to be pro-

tected by any contract which it can make with reference to this kind of work, then it certainly was protected by the contract which it made in this case; and, unless that contract is to be entirely destroyed, I do not see how there can be a recovery in this action, beyond the $325. The contractor, as already said, agreed that he had familiarized himself with the work to be done, by a personal examination. He agreed to do the work according to certain plans and specifications, and map and profile on file, referred to in the contract. He could have the city surveyor indicate the center and grade lines, at his option; but, if such lines and grades were indicated by the city surveyor, then such surveyor, according to the express provisions of the contract, was his agent, and not the agent of the city. How can it be said, under such circumstances, that, for an error made in indicating the center and grade lines, the contractor is not responsible, even though it be conceded that he did not, in the first instance, request that such lines be given? If he did not ascertain the correct lines then he failed to do that which the contract required of him. He agreed to do the work in a certain way, and he cannot escape the responsibility of the agreement under the cover that some one, alleged to have been acting for the city, indicated certain lines, and that he did not request such indication to be made. If the city can be held liable in this case, then contracts serve little or no purpose.

For the foregoing reasons, we are of the opinion that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff will stipulate to reduce it to the sum of $325 and interest thereon; and, if such stipulation be made, then the judgment should be modified to that extent, and as so modified affirmed, without costs to either party.

VAN BRUNT, P. J., concurs.

O'BRIEN, J. For reasons given by Judge STOVER, at trial term, I dissent.

INGRAHAM, J. I concur with Mr. Justice McLAUGHLIN in a reversal of this judgment. It is quite true that Thomas Slater was on the 13th day of August, 1889, designated by the defendant to act as the city surveyor under the contract between the plaintiff and the defendant. That designation, however, did not make the surveyor the general agent of the city. As between the parties to this action, whatever authority he got under his designation was that given to him by the contract. The city would be liable for all acts of the surveyor within the scope of his employment, when acting for or on behalf of the city. What the plaintiff's assignor agreed to do under the contract was to furnish "and provide all the materials and labor for the purpose, and regulate and grade Claremont avenue from One Hundred and Twenty-Second to One Hundred and Twenty-Seventh street, and set curbstones and flag sidewalks therein. * * * All the work and labor done under this contract shall and will be done at the times, in the manner, and under the conditions set forth and specified in this contract and said specifications." And the plaintiff agreed

to complete the work to the entire satisfaction of the commissioner of public works. Under the contract, it was the commissioner of public works who was the agent of the city, and who acted for the city, in making the contract, and the contract was to be completed according to the specifications. The contract then provided for the appointment of a city surveyor, and his duties were clearly defined. He was to see that the work was completed in conformity with the profile, and he was to ascertain and certify the quantity of the work done. Thus, the city surveyor was employed by the city for a definite purpose, and had no duty to perform under his employment except that necessary to supervise the work, to see that it was completed according to the contract, and to give the necessary certificates as to the completion of the work. The provision in regard to designating and fixing the grades during the progress of the work was for the benefit of the contractor, and not for the city. It made no difference to the city whether the contractor had or had not the proper grades; for, until the street was excavated to the grades required according to the profile map of the work, the contractor was not entitled to receive his money. This surveyor, designated by the city to protect its interest, was also required to act for the contractor in fixing the grades, if the contractor desired; but it was expressly provided that in that case the surveyor was the agent of the contractor, and not the city, and the city was not responsible for any mistake that he should make. There was nothing in such an agreement that was void as against public policy. The contractor was at liberty to employ his own surveyor, as he did. He was at liberty to do his work according to the grades and levels given by his own surveyor, and when he had completed his work he would be entitled to his money, whether the grades were given by his own surveyor, or by the surveyor that had been designated by the city. This provision as to the city surveyor giving the grades was clearly one for the benefit of the contractor, and one which he could accept or not as he saw fit, but in fixing such grades the city surveyor was not acting as an agent of the city.

Assuming, however, that the city would be responsible for any grades given by Slater which were erroneous, there is no evidence that Slater ever gave a grade that was erroneous. Slater was the surveyor designated. The city relied upon his capacity and integrity to act for it under the contract. The plaintiff testified that when he commenced this work, on or about the 23d of November, 1889, he found certain stakes there, which he assumed to indicate the proper grades; that he worked several days at this stake, when a Mr. Grassnock came upon the work with an instrument, accompanied by a boy, and informed the plaintiff's assignor that he was Slater's assistant, and had been sent there to give to the plaintiff grade stakes. In the first place, this statement that he was Slater's assistant, sent there for this purpose, was no evidence, against the city, that he occupied that relation to Slater, or that Slater had sent him there to fix these grades. Nor would the city be liable for Grassnock's errors, assuming him to have been Slater's assistant, because the city had appointed Slater, and not Grassnock, and Slater had no authority to substitute another surveyor in his place to perform the important duties that the city had em-

ployed him to perform. The plaintiff's assignor knew that this was not Slater; knew that Slater was the surveyor. He had been instructed by the superintendent of street employment to do the work in accordance with the grade lines and stakes as given by Slater, the surveyor in charge; and before the city could, under any circumstances, be held liable, he was bound to show that Slater had given him grades and levels which were erroneous. Here Slater gave no grades and levels. Plaintiff's assignor acted upon the assumption that a man who appeared there and said he was Slater's assistant was the proper person to give such grades and levels, when in fact such person had, so far as appears, no authority from any one. If the plaintiff's assignor had requested the city to require Slater to give the grades, and Slater had failed to furnish the grades, the city would have been liable under the contract for any damage sustained by its failure to keep its contract; but as Slater gave no grades or levels, and the plaintiff's assignor made no request for such grades or levels, it seems to me that there is no basis for any claim that the city should be responsible for the mistakes made by the plaintiff's assignor in the performance of his contract. I concur, therefore, in the reversal of this judgment.

HATCH, J., concurs.

---

### In re McALEENAN.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. APPEAL AND ERROR—EXCEPTIONS—NECESSITY.

    Where exceptions were taken to a referee's report to a surrogate's court, and the surrogate sustained the exceptions, basing his decision on the facts found by the referee, it is not necessary, in order to present a question to the appellate court, that the appellant should file exceptions, since the facts found by the referee stand in place of a finding of facts by the surrogate, and on appeal from the surrogate's decree the correctness of the surrogate's conclusions of law was presented for review.

2. EXECUTORS AND ADMINISTRATORS—WHAT CHARGEABLE TO EXECUTOR.

    Appeal from surrogate's court, New York county.